## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GINA S.,[1]

      Plaintiff,

                                **Case No. 2:22-cv-2784**

    v.                          **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Gina S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.     PROCEDURAL HISTORY

On March 22, 2016, Plaintiff filed her application for benefits, alleging that she has been disabled since October 15, 2015. R. 133, 148, 389–90. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 172–80. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 181–82. ALJ Myriam Fernandez Rice held a hearing on October 17, 2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 90–119. In a decision dated November 7, 2018, ALJ Fernandez Rice concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 15, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 152–62 ("the 2018 decision"). The Appeals Council granted Plaintiff's request for review, vacated the 2018 decision, and remanded the matter on December 20, 2019. R. 167–71. The Appeals Council specifically remanded for resolution of the following issues:

- The hearing decision assigns great weight to the opinion of Toros Shahinian, MD (Decision, page 8) who opined that the claimant should avoid even moderate exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery and heights (Exhibit 3A, page 11). However, the assessed residual functional capacity (Decision, finding 5) provides that the claimant should only avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts and gases (Id). In addition, the hearing decision states that Dr. Shahinian opined that the claimant should avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts and gases (Id, page 8); rather, Dr. Shahinian opined that claimant should avoid even moderate exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery and heights (Exhibit 3A, page 11). Further consideration is warranted.

- The hearing decision assigns weight to the observations and evaluations of Betty Vekhnis, MD (Decision, page 8 and Exhibit 5F). In accordance with 20 CFR 404.1527 the hearing decision should only provide weight to medical opinions, not observations and evaluations. Further consideration is warranted.

- The hearing decision does not assign weight to the opinions of Harry Berkowitz, MD as to various of the claimant's functional limitations (Decision, pages 8-9; and Exhibits 7F, page 3; 10F, page 2; and 14F, pages 1 and 4-7). In accordance with 20 CFR 404.1527 the hearing decision needs to provide a weight to Dr. Berkowitz's opinions.

R. 169–70. The Appeals Council also specifically ordered the ALJ to take certain steps, as

follows:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512).

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p). In so doing, evaluate the opinions pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence.

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. 170.

Following remand, a different ALJ, Beth Shillin, held a hearing on December 1, 2020, at

which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–82.[3]

In a partially favorable decision dated March 18, 2021, ALJ Shillin concluded that Plaintiff was

---

[3] A different ALJ, Douglass Alvarado, held a hearing on April 28, 2020, but neither Plaintiff nor the vocational expert actually testified at that hearing. R. 83–89 (reflecting that there were outstanding treating physician records and that, because ALJ Alvarado was retiring in a few weeks, the hearing was postponed and no testimony was taken).

not disabled prior to February 9, 2019, but that she became disabled on that date and was continuously disabled through the date of that decision. R. 14–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 17, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 24, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[4] On May 8, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through March 31, 2020. R. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 15, 2015, her alleged disability onset date, and March 31, 2020, the date on which Plaintiff was last insured for benefits. R. 16–17.

At step two, the ALJ found that Plaintiff's degenerative disc disease in the lumbar spine, carpal tunnel syndrome, asthma, and obstructive sleep apnea were severe impairments. R. 17. The ALJ also found that Plaintiff's thyroid cyst, anxiety disorder, depressive disorder, and foot disorders were not severe impairments. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 18–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an administrative assistant. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to the established disability onset date, a significant number of jobs—*e.g.*, jobs as a charge account clerk, a telephone information clerk, a document preparer—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 30. However, the ALJ further found that, beginning on the established onset date of February 9, 2019, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 31 (explaining further that, beginning on that date, Plaintiff's age category changed and a finding of "disabled" was directed by application of the Medical Vocational Rule 201.14). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security

9

Act prior to the established onset date of February 9, 2019, but that she became disabled on that date and has continued to be disabled through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On September 23, 2016, Harry Berkowitz, M.D., Plaintiff's primary care physician, completed a one-page, check-the-box, and fill-in-the-blank certification. R. 616 ("the 2016 opinion"). Dr. Berkowitz diagnosed Plaintiff with lumbar radiculopathy. *Id*. Dr. Berkowitz opined that Plaintiff had limitations in standing, walking, and lifting. *Id*. According to Dr. Berkowtiz, Plaintiff could perform activities of daily living and had no social or behavioral limitations, but was unable to lift/carry objects, walk 10 minutes, or sit for 15 minutes. *Id*. Dr. Berkowitz further opined that Plaintiff was unable to perform substantial gainful activity. *Id*.

On August 1, 2018, Dr. Berkowitz completed a seven-page, check-the-box, and fill-in-the-blank form entitled "Spinal Impairment Questionnaire." R. 655–61 ("the 2018 opinion"). Dr. Berkowitz indicated that he had treated Plaintiff twice a year since March 2016, and most recently had treated Plaintiff on August 17, 2017. R. 655. Dr. Berkowitz diagnosed Plaintiff with lumbar radiculopathy with a guarded prognosis. *Id*. Dr. Berkowitz noted positive straight leg raise testing on the left at 45 degrees, with no tenderness; lumbar muscle spasm; no sensory loss,

10

reflex changes, or muscle atrophy; 4/5 muscle weakness in the left lower extremity but a normal gait. R. 655–56. Plaintiff's primary symptoms were low back pain radiating to the lower extremities, which was exacerbated by walking or changing positions. R. 657. Dr. Berkowitz opined that, in an eight-hour workday, Plaintiff could sit for less than one hour (she must get up and move around every 20 minutes); stand/walk for 15 minutes; and frequently lift and carry up to 10 pounds. R. 658–59. According to Dr. Berkowitz, Plaintiff's experience of pain or other symptoms was severe enough to frequently interfere with attention and concentration and that her impairments were ongoing and were expected to last at least twelve months. R. 659. Dr. Berkowitz also indicated that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations but he left blank the question asking him to "indicate what emotional factors affect your patient (give specifics)." R. 659–60. Dr. Berkowitz opined that Plaintiff was capable of low stress work. R. 660. Dr. Berkowitz left blank the question asking whether Plaintiff's impairments likely produced "good days" and "bad days[.]" *Id*. Asked how often Plaintiff was likely to be absent from work as a result of the impairments or treatment, Dr. Berkowitz's written response appears to be "unable to answer" and he wrote two question marks in the margin next to these questions. *Id*. Asked to identify any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Berkowitz checked the boxes indicating psychological limitations, no kneeling, no bending, and no stooping. R. 660–61. Dr. Berkowitz left blank the question asking the date of onset of these symptoms and limitations. R. 661.

## V.  DISCUSSION

Plaintiff challenges the ALJ's consideration of Dr. Berkowitz's findings and opinions, and argues that this error resulted in a flawed RFC determination. *Plaintiff's Brief*, ECF No. 10,

11

pp. 18–25; *Plaintiff's Reply Brief*, ECF No. 12. For the reasons that follow, this Court concludes that substantial evidence does not support the ALJ's consideration of Dr. Berkowitz's opinions and the RFC determination, but for reasons slightly different than those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[5] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's

---

[5] As previously noted, Plaintiff's claim was filed on March 22, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

opinion outright only on the basis of contradictory medical evidence and not due to his or her

own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal

quotation marks and citations omitted). The ALJ must consider the following factors when

deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the

record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20

C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot

reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F.

App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F.

App'x at 209–10 ("We have also held that although the government 'may properly accept some

parts of the medical evidence and reject other parts,' the government must 'provide some

explanation for a rejection of probative evidence which would suggest a contrary disposition.'")

(quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . .

. the opinion of a treating physician conflicts with that of a non-treating, non-examining

physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is

apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an

explanation from the ALJ of the reason why probative evidence has been rejected is required so

that a reviewing court can determine whether the reasons for rejection were improper.") (internal

citation omitted).

 At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff

had the RFC to perform a limited range of sedentary as follows:

> After careful consideration of the entire record, I find that since the alleged onset
> date, the claimant had the residual functional capacity to occasionally climb

> ramps/stairs, crouch, crawl, stoop, kneel and balance; and never climb ladders, scaffolds or ropes. The claimant requires the use of a cane while ambulating. The claimant can have no exposure to heavy machinery or heights; and only occasional exposure to environmental pollutants or extremes of temperature or humidity. The claimant is able to frequently handle, finger and feel. The claimant is able to perform work allowing for an option to sit/stand at will while staying at the workstation and remaining on-task. Due to experience of pain, the claimant has been able to perform only unskilled work.

R. 18–19; *see also* R. 28 ("The claimant had difficulty walking long distances, especially once she started using a cane, which would *clearly limit her to sedentary exertional work*.") (emphasis added), 29 ("Overall, due to degenerative disc disease in lumbar spine; carpal tunnel syndrome; asthma; and obstructive sleep apnea, the claimant has been *capable of performing sedentary exertional work* activity, with postural, manipulative and environmental restrictions.") (emphasis added). In reaching this determination, the ALJ expressly stated, *inter alia*, that she "considered medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR *404.1520c*." R. 19 (emphasis added). Later in her discussion, the ALJ specifically explained that, "[a]s for *medical opinion(s)* and prior administrative medical finding(s), *I will not defer or give any specific evidentiary weight, including controlling weight, to any* prior administrative medical finding(s) or *medical opinion(s), including those from your medical sources*." R. 28 (emphasis added). The ALJ went on to assign "little weight" to Dr. Berkowitz's 2016 and 2018 opinions, reasoning as follows:

> Clinical notes from Harry Berkowitz, M.D., the claimant's primary care physician, dated September 23, 2016, stated that the claimant presented with low back pain. She said it started hurting after doing exercise, and hurt when standing, walking, and sitting. Upon examination, the thyroid was diffusely enlarged. Musculoskeletal examination revealed full range of motion, with no radicular pain noted. There was no spinous or paraspinous tenderness. Extremities were normal and symmetric. The rest of the examination was normal. Assessment was unspecified asthma, uncomplicated; nontoxic goiter, unspecified; and radiculopathy, lumbosacral region. The claimant was prescribed tramadol and asthma medications. She was scheduled for an ultrasound of the thyroid. (Exhibit 6F pp.2-3)

R. 20.

> On September 23, 2016, Dr. Berkowitz completed a report. It was opined that the claimant was limited in regard to standing, walking and lifting. He said the claimant could perform activities of daily living; and then opined that she was unable to lift/carry objects; walk ten minutes or sit for 15 minutes. It was further opined that the claimant was unable to perform substantial gainful activity. (Exhibit 10F p.2 [R. 616]) These opinions are given little weight as they are not supported by or consistent with the medical evidence of record. There is no reference to any progress notes to support these opinions. Further, *physical therapy notes in Exhibit 10F indicated that the claimant reported being able to sit for 30 minutes*. Progress notes from Dr. Berkowitz stated that the claimant complained only of back pain with radiation to the legs.

> The opinion of disability is reserved for the Commissioner.

R. 28–29 (emphasis added).

> On August 1, 2018, Dr. Berkowitz completed a spinal questionnaire. It was noted that the claimant was diagnosed with lumbar radiculopathy, and had positive straight leg raise testing on the left at 45 degrees, with no tenderness. It was noted that there was muscle spasm. However, there was no sensory loss, reflex changes or muscle atrophy. Although there was muscle weakness, 4/5 in the left lower extremity, the claimant had a normal gait. It was related that there was low back pain with radiation to the lower extremities, exacerbated with walking and changing positions. It was opined that in an eight hour workday, the claimant was able to sit less than one hour; stand/walk less than one hour; and frequently lift/carry up to ten pounds. It was further opined that the claimant's experience of pain or other symptoms were severe enough to frequently interfere with attention and concentration. It was further opined that the claimant was capable of performing low stress jobs. It was further opined that the claimant could perform no kneeling, bending or stooping; and had psychological limitations. (Exhibit 14F)

R. 21–22.

> The [2018] opinions at Exhibit 14F [R. 655–61] are given little weight. They are inconsistent with previous evaluations and not supported by the medical evidence of record. They are also inconsistent with the progress notes from Dr. Berkowitz himself; and with the self-reports of the claimant.

R. 29.

> Both parties agree that it is 20 C.F.R. § 1527 that applies to Plaintiff's claim, which was

filed on March 22, 2016. *Plaintiff's Brief*, ECF No. 10, pp. 18–19, 22, 23; *Defendant's Brief*

16

*Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 11. However, neither party points out that, in evaluating Dr. Berkowitz's treating opinions, the ALJ cited 20 C.F.R. § 1520c, a regulation that had no applicability to Plaintiff's claim. *See id.*; R. 19, 28–29. Although the ALJ assigned "little weight" to the 2016 and 2018 opinions, it is not clear that she applied the correct standard in her analysis of those opinions. As set forth above, the ALJ specifically warned that she would "not defer or give any specific evidentiary weight, including controlling weight," to any opinion, including the opinions of Plaintiff's treating providers. R. 28. As previously explained, the applicable regulation, § 404.1527(c), requires that a court accord great weight, or even controlling weight, to a treating opinion if medically acceptable clinical and laboratory diagnostic techniques support that opinion and if the opinion is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Nazario*, 794 F. App'x at 209; *Hubert*, 746 F. App'x at 153; *Brownawell*, 554 F.3d at 355; *Fargnoli*, 247 F.3d at 43. In assigning "little weight" to Dr. Berkowitz's 2016 and 2018 opinions, the ALJ stated generally that the "medical evidence of record" did not support, and was not consistent with, this treating doctor's opinions. R. 29. However, other than referring to Plaintiff's statement in Exhibit 10F that she could sit for 30 minutes and Dr. Berkowitz's progress notes indicating that Plaintiff "complained only of back pain with radiation to the legs[,]" the ALJ offered no other specific citation to the record,  nor did she otherwise explain the reasons why she discounted these opinions. *See id*. Notably, as Plaintiff points out, the ALJ neither acknowledged nor discussed how she considered Dr. Berkowitz's examining and treatment relationships or his specialization (if any). *Id*. In light of the ALJ's express reference to 20 C.F.R. § 404.1520c and her specific warning that she would not defer to any opinions, including those of any treating provider, the ALJ's decision simply does not allow this Court to understand and assess whether the ALJ

considered the appropriate regulatory factors when discounting Dr. Berkowitz's 2016 and 2018

opinions. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient

development of the record and explanation of findings to permit meaningful review"); *Gill v.*

*O'Malley*, No. CV 23-165, 2024 WL 896386, at *3–5 (W.D. Pa. Feb. 29, 2024) (remanding case

where the ALJ "may have used the correct terminology" such as "little weight[,]" but incorrectly

cited to 20 C.F.R. §§ 404.1520c and 416.920c and where "the record is simply not clear as to

whether the ALJ applied the correct regulations in his analysis of these opinions" because the

ALJ's decision "does not allow the Court to determine whether he considered Dr. Powell's status

as a treating doctor or, if so, how he factored that information into his analysis of the opinion

evidence" and where, in assessing another treating opinion, "the ALJ did not acknowledge any of

the following: the examining relationship, the treatment relationship, supportability, consistency,

or specialization"); *Richards v. Kijakazi*, 554 F. Supp. 3d 242, 251 (D. Mass. 2021) ("The ALJ

failed to fully consider the factors prescribed by § 404.1527; indeed, he expressly declined to

apply them. . . . Here, though he arguably considered the supportability and consistency of Dr.

Koehne's opinion, the ALJ failed to consider the factors centered on Dr. Koehne's treatment

relationship with Richards. Given that the Dr. Koehne treated Richards as a primary care

physician, it is conceivable that given consideration under the appropriate standard, the ALJ

would have given additional weight to her opinion."). Based on this record, the ALJ has not

adequately explained her evaluation of the evidence and reasons for discounting Dr.

Berekowitz's 2016 and 2018 opinions in a manner that would permit this Court to meaningfully

review whether the ALJ's reasoning accords with the regulation's standards. *See Gill*, 2024 WL

896386, at *5 ("[T]he ALJ's sparse analysis without consideration of any of the relevant factors

listed in 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6) makes it impossible for this

Court to conclude with certainty that the correct regulations were applied."); *Richards*, 554 F. Supp. 3d at 251; *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) ("[A]n ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'") (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)).

Nor can the Court conclude that the ALJ's error in this regard is harmless. Dr. Berkowitz's opined functional limitations that Plaintiff can, *inter alia*, sit for a total of less than one hour and stand for a total of 15 minutes in a work day, R. 658, are apparently inconsistent with the RFC for sedentary exertion. R. 18–19; *see also* SSR 83-10 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). Moreover, it is unclear on the present record whether Dr. Berkowitz's other opined functional limitations, *i.e.*, that Plaintiff's symptoms are frequently severe enough to interfere with her attention and concentration, R. 659; and that Plaintiff requires unscheduled breaks to rest at unpredictable intervals, R. 660, would be work-preclusive. R. 77–78 (reflecting vocational expert testimony that there would be no jobs available to someone who is off task 15% or more of the day).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[6] Moreover, remand is appropriate even if, upon further examination

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Berkowitz's 2016 and 2018 opinions and the RFC determination, the Court does not consider those claims. However, it would be helpful on remand if the ALJ clarified the actual date of the established onset date. Although not mentioned by the parties, the Court notes that the ALJ identified the established

of Dr. Berkowitz's 2016 and 2018 opinions and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this Opinion and Order.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  March 14, 2024                                    *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE

---

onset date as February 9, 2019, which the ALJ described as the date on which Plaintiff's age category changed. R. 29, 31. However, the record reflects that Plaintiff's actual date of birth is a slightly different date. R. 85, 120, 133–34, 148, 389.